Good morning. May it please the court, Amy Cleary on behalf of Appellant Clinton Warrington. I first want to thank the court for expediting this appeal. This case involved several sentencing errors that we asked the court to remand on. I'd like to focus on two of them, the Tapia error and the District Court's failure to calculate the guidelines. And then, permissibly, to address this court's published decision yesterday in U.S. v. Nacida, which would impact the remand. Congress, through 3582, made clear that District Courts cannot impose or lengthen the term of an incarceration simply to promote rehabilitation. But that is exactly what happened here. And we know that because the Supreme Court made clear in Tapia v. United States that when a court even possibly suggests that the term of incarceration is built on rehabilitation, that is plain error. This court, on remand from Tapia, and I'll refer to this court's decision as Tapia 2, makes clear that the very language that the District Court used here was used in Tapia and resulted in the remand. In Tapia 2, the District Court stated that the sentence had to be sufficient to provide needed correctional treatment, which the court determined to be the RDAP program or the 500-hour treatment program. It's fair to say that Tapia is consistent with a number of cases regarding the 500-hour drug and alcohol rehabilitation program. Judges know that there has to be a certain guideline range or sentence range for acceptance into that very productive program so that there is oftentimes pressure on a District Court judge to impose a sentence perhaps a little bit more extreme or severe than the guidelines would call for or that he would decide or she would decide on her own. This is a little bit different situation. Here, Mr. Warrington is sentenced within these advisory guidelines. Of course, the guidelines for supervised release are much more loose than regular guidelines, but he's all within the range. There's a response to some pretty outrageous behavior on his part. Obviously, everybody knows that the ranges within the guidelines are 7 to 13 months, and the judge picks up the top end of the guideline, does not accept the government's recommendation of 18 months, says the 13 months. So the question is whether the judge increased what he was thinking, it was a he, in terms of what sentence was to be imposed so that, in fact, this defendant could figure out whether meds were necessary, or was he saying this is the sentence that's recommended at probation, this is the top of the guideline, this is the sentence I would impose, and by the way, this is going to give this defendant an adequate opportunity to find out whether this person needs drugs in the future. Now, if it's that second scenario, there's no tapia violation, because that, in fact, was going to be the sentence. Is that fair to say? And if so, tell me how we necessarily interpret this transcript, this record, to suggest that the judge really was going to give a reduced sentence, but then went up because of these factors. Thank you, Your Honor. Sorry that was so long. But sometimes you get rolling, and you just have to just continue on with the question. But go ahead. Understood. The Supreme Court makes clear district courts can speak to a defendant and say these are the options that are going to be available to you in prison. The district court can speak to the types of rehabilitation programs that are available. What the district court cannot do, and I submit, Your Honor, is the different type of response from the district court to say, we want you to get mental health treatment. The problem here is his language, for a sufficient period of time to figure out if, in fact, he needs medication. The for a sufficient period of time language is a classic tapia error, and that is where the district court overstepped. We don't know exactly what the sentence would have been, but that's not what tapia says. In fact, tapia says the exact opposite, which is how we get to plain error. If the district court's consideration at all was to provide him the mental health treatment, that's error. And I submit, Your Honor, the conduct here, you reference it as outrageous conduct. These are technical violations. There was no new law violations. And everyone did not know, according to this record, what the sentencing guideline range was, which brings me to the second error, which, under Pew v. United States, this court's en banc decision in Cardi, the district court had an obligation to state on the record and determine at the outset of the sentencing part of the revocation proceedings what the guideline range was. That's very true when district court judges are applying the guidelines in a standard sentence. But this is a violation of supervised release. The guidelines in the supervised release proceedings are much looser, much more, I guess, suggestive, but not obligatory. And I'm not aware of any decisions which necessarily apply that requirement, that you go over the guideline ranges in supervised release violations as opposed to standard sentences. Do you have some case law to suggest that the requirement that you say this is what the guideline calculation is applies to supervised release violations? I do, Your Honor. It's United States v. Hammonds, which was a supervised release case. And in determining the error in that case, one of the procedural errors was the district court's failure entirely to announce what the guideline range was. That was exactly what happened here. That's Ninth Circuit, Hammonds. It's cited in our brief and in our reply. And the government doesn't address it in its answering brief. So there can be no response from the government that for some reason this Court shouldn't apply its own precedent. Hammonds directs that this is an error. And on that remand for that error, the Court should correct the topia aspect of it, because it could not determine that Mr. Warrington should have been incarcerated to get that treatment. And we know he's not even getting that treatment, which was the whole point of Congress in Acting 3582 and the Supreme Court in this Court stating those are improper considerations. Was he sent to Buckner? He was not, Your Honor. He's in U.S. Penitentiary Beaumont, which is a very violent prison. And he's not getting the assistance that he needs. Because of the topia error, because of the district court's error to announce on the record what the guideline range was, this is needed to be remanded. And if possible, I'd like to reserve my remainder for rebuttal unless you have additional questions. Sure. Thank you. Thank you. We'll hear from the government now. May it please the Court. Bill Reed for the United States. Mr. Warrington's topia argument is based upon the district court's recommendation that he be designated to a BOP treatment facility, but the court did not structure or lengthen Mr. Warrington's sentence for treatment purposes. The court merely recommended that Mr. Warrington be designated to the BOP facility of Buckner. When you say the court did not structure the sentence for treatment purposes, isn't that so it doesn't apply in this case, but isn't that like saying the only time topia applies is when the district judge says, I'm sentencing you to this length of time specifically for the purpose of X. Is that the only time when topia were applied? Your Honor, I believe topia from the Supreme Court in the second topia case, the triggering language or thought process from the district court has to be that the sentence has to be causally, if that's the word, related to treatment or rehabilitation. And in this case, I would respectfully submit there's no evidence that the 13-month sentence was causally related to treatment or rehabilitation of the court. Well, except for the judge's statement. It depends on what you make of the judge's statement, doesn't it? And the statement, Your Honor, was that he be designated to a facility not sentenced, though, for 13 months for treatment. In fact, the district court was highly skeptical of Mr. Warrington's need for treatment, and that further buttresses the government's argument that he sentenced him to 13 months for rehabilitation or treatment in this case. The most reasonable interpretation I would respectfully submit is that the court recommended that he be designated, Mr. Warrington be designated to a BOP treatment facility to determine if he needed medication, as Mr. Warrington and his counsel suggested, and then after that assessment was made, be transferred to another BOP facility for the remainder of his 13-month sentence after having been medicated, if necessary. There's simply, unlike other cases, the Tapia case itself and other cases, the court was not struggling with how to fashion this sentence to incorporate a 500-hour in Tapia, as in Tapia, a 500-hour drug treatment program or to allow the defendant to give birth in prison or any number of things where rehabilitation or treatment has been tied to a sentence. How did the judge come up with 13 months? Your Honor, well, first, the judge followed the recommendation of the probation officer of 13 months. I would respectfully submit it's where the 13 months came from. Well, was there, I mean, ordinarily there's a sentencing recommendation from a probation officer. It ordinarily is in writing. Some jurisdictions, it's actually distributed to both sides. In others, it's not. But do you, I looked through the record to see if there was any sentencing recommendation which would actually say what the range is, because there's some question as to whether the judge even knew what the ranges were in this case. Was there a written formal sentencing recommendation from the probation officer in which the probation officer highlighted the range and then the recommendation at the top of the range? To answer Your Honor's question directly, there is nothing in the record. The record is devoid of that. If I may be permitted to give a reasonable inference of what, as Your Honor suggested, is a normal customary practice, it seems that here everyone was aware of what this range was. And, in fact, as the defendant's brief suggests, there was a PSR from the previous case that set out what his criminal history, what his range was under the guidelines. And in this case, the court did not specifically enunciate or explicitly enunciate what that range was. And the government failed to remind the court, I would respectfully submit. If somebody, either the probation officer or the U.S. Attorney's Office had calculated the guideline, was 13 months at the high end of what the suggested range would have been? Yes, Your Honor. I don't believe there's any dispute between the parties that 13 months would have been the high end of the, if it had been explicitly calculated and made a part of the record, that 13 months would have fallen within Mr. Warrant's- The limit of seven. Thirteen months, I believe, Your Honor. And I don't believe there's any dispute that that's, it just was not made explicitly a part of the record. This is the end of the week. What was, what had he done that was so serious? To merit a revocation of his supervised release. Well, I have to speak, I have to step into the shoes of the district judge a little bit to answer that. But here, the government advocated for a higher sentence above his applicable guideline range. But I would submit that this was a, first of all, this is a very experienced district judge who had handled the case previously, been on the bench for many, many, many years. But the allegations, there were four separate counts or specifications. The first is that he admitted to using drugs. Yes. And that was confirmed by the judge. Second, he refused the substance abuse treatment. Then he refused mental health treatment. And then he refused to take the medication which was essentially prescribed by a physician in violation of his conditions of release. And then the judge found that he committed, after a hearing, after a full hearing, all four of those were found to be the violation. His use of drugs, he admitted to the probation officer, and that was meth. He used meth. I believe it was marijuana, Your Honor. No, I thought it was, well, correct me if I'm wrong. I thought it was marijuana and meth. It may be meth, methamphetamine. I stand corrected. But there were multiple positive drug tests, and there wasn't, he admitted to that, Your Honor. That was not part of the, this simply, I would submit, was a, all of this occurred after, I believe, he went on supervised release December 28th of 2021, and within a matter of less than two months, a petition had been filed by the probation officer on February 25th of this year. This was a, all of the enumerated violations, Your Honor, just articulated were, I would respectfully submit serious breaches of the court's trust here, and the court was warranted in imposing this. It was a guideline sentence, I again suggest, and guideline sentences are essentially reasonable. What was the basis for his underlying conviction? Felon in possession of a firearm. If he'd been at a. But at the time, his sentence, his initial sentence, was run concurrently with a state sentence, which had a much longer range, and that had to do with bomb threats and obstruction of justice, I believe. I think that's correct. So he was basically serving not only the felon in possession of a firearm on the federal system, but he had a longer sentence, which had been run concurrently and had expired now, for bomb threats, etc. Yes, Your Honor. And to answer what justified, I'd have to, again, step into the shoes of the district court. Maybe the court said I gave you a concurrent sentence originally, you've reached the court's trust with these multiple violations, and I've reached the end of my rope, so to speak, and I'm going to impose the maximum guideline sentence. I would suggest it was well justified given this constellation of factors, and I don't want to pile on Mr. Warrington, but he certainly, I think the record supports, he had a certain menacing type of character that the court was on to. Okay. Unless there are any additional questions, I see my time has about expired. I respectfully submit it to the panel. Okay. Thank you, counsel. Thank you. Judge Sessions, I just want to be clear on what the violations were. Mr. Warrington is mentally ill, and before he got any contact with a probation officer and any referrals for mental health treatment, he was only tested positive for marijuana, which he admitted. There was no violent conduct in this case, and there was no medication that was prescribed to him. So the special condition four, which we challenged, there was nothing for him to take, so he couldn't have violated that condition. So I just want to make sure that the violations are clear. And Judge Tashima, you're  You are, Your Honor. I'm wrong? Sorry. It's all right. It's okay. There are a lot of cases. I can't keep it straight half the time. That's it. Okay. Shima, you are exactly right. There are no specific words a district court needs to use to commit a topiary. In this case, the language was almost exactly on par with what the district court said in Tapia, that it needed to be a sufficient time. So I don't see any daylight in between Tapia and this case. Can I ask you one question? Did the judge announce at the beginning of the proceeding, when it was time for sentencing, that he was inclined to impose 13 months at the very beginning? No, Your Honor. When does, in connection with the sentencing scenario, when does he announce the sentence of 13 months? After the district court makes its revocation findings, it then turns and says the probation officer has recommended 13 months, doesn't address what the range is. The government immediately steps in and says we would like to impose 18 months. At that point, the court says it has one question, and that was how much time had Mr. Warrington accumulated for pretrial credit so it could kind of determine how long he was actually going to be in BOP custody. With that information, which was negligible pretrial credit, the district court and defense counsel had requested zero for credit for time served or three months at the outset. The district court stated then that it was going to impose 13 months. It wasn't clear that it was a range of 7 to 13 months, and the district court needs to have that information in its head throughout and at the beginning of the sentencing proceedings. And even if there was a sentencing recommendation by the probation, it's not in the record. But that doesn't take away the district court's obligation to determine that that was correct because we have defense counsel asking for zero to three months. We have the government asking for 18 months. The range is 7 to 13. The failure to state what that range was created the error and also impacts the TAPIA because we don't know what the district court was doing. So it takes away this court's ability to figure out what the intent was. For those reasons, we ask that this court be remanded for the TAPIA error, the procedural errors that we've outlined. And I'll note that Mr. Warrington's outdate is March 1st. So, again, I do appreciate this court expediting this case as it had. Okay. Thank you very much. Thank you, counsel. Thank both counsel. Can I ask a question? Back to the lectern. So, Judge Tachibana. I'm assuming on remand, assuming the judge gives a sufficient explanation, that he can impose the same sentence. Do you agree with that? If the court finds, yes. If the court makes specific statements separate and apart from TAPIA, but as we've discussed, these are technical violations. It wouldn't have seemed to have warranted a top end of the range. And additionally, in U.S. v. Nishida, which this court issued yesterday, the medication or the obligation that Mr. Warrington go for mental health treatment is error now under this court's new precedent because it allows the probation officer to determine the nature and the extent of that. And it includes, as it's written, inpatient treatment. So that is an additional error that the district court would need to address. Thank you. Okay. Now thank you. And again, thank you both for your arguments this morning. We appreciate it. The matter is submitted.
judges: TASHIMA, PAEZ, Sessions